UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-10379-RWZ

ANTHONY SULLIVAN

v.

NANCY A. BERRYHILL,
Acting Commissioner of the Social Security Administration

MEMORANDUM OF DECISION

July 10, 2018

ZOBEL, S.D.J.

Plaintiff Anthony Sullivan appeals from a final decision by the Acting Commissioner of Social Security ("the Commissioner") upholding the ruling of the Administrative Law Judge ("ALJ") that rejected his application for Supplemental Security Income ("SSI"). Plaintiff contends that the ALJ erred in concluding that his bilateral shoulder limitations were not severe, and in failing to give appropriate weight to the related medical opinion evidence.

I.  **Background**

Plaintiff filed an application for SSI on January 28, 2014. He originally alleged disability as of November 2, 2003, but later amended the onset date to the date of his 2014 SSI application. His claim was first denied on July 2, 2014, and again upon reconsideration on October 27, 2014. Plaintiff requested a hearing before an ALJ, and

a hearing at which the plaintiff and a vocational expert ("VE") testified was held on January 5, 2016.

### A. Applicable Statutes and Regulations

To receive SSI benefits, a claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c (a)(3)(A). The impairment "must be of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 1382c (a)(3)(B); see also 20 C.F.R. § 416.905(a).

The ALJ analyzes whether a claimant is disabled using an established "five-step sequential evaluation process." See 20 C.F.R. § 416.920(a)(4)(i)–(v). Under this framework, the ALJ first determines whether the claimant is currently engaging in substantial gainful work activity. If not, at step two the ALJ then decides whether the claimant has a "severe" medical impairment or impairments, i.e. one that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. § 416.920(c). If the claimant has a severe impairment or impairments, the ALJ considers third whether the impairment or impairments meets or equals an entry in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and meets the duration requirement. If so, then the claimant is considered disabled. If not, the ALJ must determine the claimant's residual functional capacity ("RFC") assessment, which is "the

2

most [a claimant] can still do despite [his] limitations," 20 C.F.R. § 416.945(a)(1). The ALJ then moves to step four and determines whether the claimant's RFC allows him to perform his past relevant work. If the claimant has the RFC to perform his past relevant work, then he is not disabled. If the claimant does not, the ALJ decides, at step five, whether the claimant can do other work in light of his RFC, age, education, and work experience. If the claimant can, he is not considered disabled; otherwise, he is. "Once the applicant has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); see also 20 C.F.R. §§ 416.912(b)(3), 416.960(c)(2).

### B. The Initial Rejection and the ALJ's Decision

In a February 2, 2016, written decision structured around the five-step sequential evaluation process, the ALJ found plaintiff was not disabled under the Social Security Act. At the first step, he determined that plaintiff had not engaged in substantial gainful activity since January 28, 2014, the date on which he filed his SSI application. Next, at step two, he found that plaintiff has several severe impairments: type II diabetes with peripheral neuropathy in the lower extremities, lumbar degenerative disc disease with disc protrusion at L3-L4 and bilateral L5-S1 radiculopathy, obesity, anxiety disorder, and affective disorder. See 20 C.F.R. § 404.1520(c). At step three, the ALJ nonetheless ruled that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part

3

404, Subpart P, Appendix 1." R.[1] at 23. Before moving to step four, the ALJ determined plaintiff's RFC:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he could lift and carry 20 pounds occasionally and 10 pounds frequently, and he could sit for 6 hours out of an 8 hour workday, and stand or walk for 6 hours out of an 8 hour workday. In addition, he could occasionally climb ramps or stairs, but never ropes, ladders or scaffolds, and he could occasionally balance, stoop, kneel, crouch and crawl. Furthermore, he could occasionally push and pull with the bilateral lower extremities, and he should avoid even moderate exposure to unprotected heights. Finally, he could maintain concentration, persistence or pace on tasks up to a specific vocational preparation of 3 (SVP 3), and he could deal with minor changes in the workplace.

Id. at 24. The ALJ explained that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and that he "also considered opinion evidence" in accordance with the Social Security regulations. Id. He ultimately concluded that although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Id. at 31.

At the fourth step, the ALJ concluded that the plaintiff is unable to perform any past relevant work. But at step five, the ALJ determined, based on the VE's testimony, "that, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Id. at 33. The VE testified that the claimant

---

[1] "R." refers to the Social Security administrative record, which was filed in this appeal at Docket # 15.

4

could perform representative occupations such as order filler, cashier, electrical assembler, and merchandise tagger. Crediting this testimony, the ALJ concluded that the claimant was not disabled.

**C.     The Appeal**

Plaintiff appealed the ALJ's decision to the Social Security Administration's Appeals Council, which denied review on February 6, 2017. The ALJ's decision then became the final decision of the Commissioner, and plaintiff brought this case under 42 U.S.C. § 405(g), seeking reversal thereof.

**II.     Standard of Review**

The Commissioner's findings of fact are conclusive if based on the correct legal standard and supported by substantial evidence. 42 U.S.C. § 405(g); Seavey, 276 F.3d at 9. Substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). So long as the Commissioner's determinations are supported by substantial evidence, they must be affirmed, "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**III.    Discussion**

In support of his motion to reverse the Commissioner's decision, plaintiff argues that the ALJ erred in concluding at step two that his bilateral shoulder impairments were not severe and in weighing the related medical opinion evidence. He urges that the

resulting RFC and hypothetical question posed to the VE were thus also erroneous and require reversal.

### A. Severity of Bilateral Shoulder Impairment

A step-two severity finding requires plaintiff to show that his medically determinable impairment significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 416.920(c), 416.921. The parties agree that this regulation is "a de minimis policy, designed to do no more than screen out groundless claims." McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986) ("[A] finding of 'non-severe' is only to be made where 'medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered . . .'" (quoting Social Security Ruling 85-28)).

Plaintiff contends that because medical evidence established that his bilateral shoulder condition resulted in functional limitations, the ALJ erred in finding the condition non-severe at step two. He points to the May 2015 report of his treating physician, Dr. Covett, opining that "bilateral hypertrophic changes" limit plaintiff's ability to push and pull, with arthritis in both shoulders limiting his ability to reach and grasp. R. 981-82. Dr. Covett also noted degenerative joint disease in plaintiff's left shoulder, and the radiology report showed calcific tendinopathy in the right shoulder. In finding the shoulder impairments non-severe, the ALJ explicitly addressed the evidence upon which plaintiff now relies:

6

> On October 12, 2015, a right shoulder x-ray showed calcific tendinopathy, but no acute radiographic abnormality. There was no left shoulder imaging study in the record (Exhibit B9F, pp. 20-21). Objective physical exams repeatedly support 5/5 strength in the bilateral upper and lower extremities, no joint edema, intact manipulation and fingering, and normal range of motion (Exhibits B1, B2, B5, B6F). Therefore, the undersigned finds the right shoulder tendinopathy condition causes less than minimal functional limitations in the claimant's ability to perform basic work activities and is a non-severe impairment. The left shoulder pain is a symptom and not a medically determinable impairment; however, the evidence suggests this could also be tendinopathy and would be non-severe, in the alternative.

R.22.

Substantial evidence supports the ALJ's conclusion. As to the right shoulder, the evidence of impairment does not demonstrate functional limitations. Treatment notes from 2009 to 2014 show full strength, normal upper extremities without tenderness. See R. 565 (October 23, 2009); R. 310 (October 18, 2011); R. 289, 923 (October 21, 2013); R. 603 (May 12, 2014); R. 659 (June 13, 2014). A clinical note dated July 28, 2015 indicates decreased range of motion, R. 993, and the October 2015 x-ray shows a mild impairment, R. 1003, but the clinical notes by November 23, 2015 again indicate normal range of motion. R. 987. The radiologist's October 2015 diagnosis of calcific tendinopathy is not determinative of severity, where plaintiff still bears the burden of demonstrating the resulting limitations. See Church v. Astrue, No. 10-30236, 2012 WL 369424 at *8 and n. 6 (D. Mass. Feb. 2, 2012).

Similarly for the left shoulder, plaintiff has not shown functional limitations flowing from any impairment. He was diagnosed in May 2015 with "hypertrophic osteoarthritis" of the left shoulder "by x-ray," R. 981, and "[degenerative joint disease] of left shoulder," R. 998, but just a single contemporaneous note indicates reduced range of motion in

7

the left shoulder.  Id.  As with the right shoulder, the preceding and subsequent clinical notes show no continuing limitation.  See R. 993 (July 28, 2015); R. 987 (November 23, 2015).  See also 20 C.F.R. § 416.909 (requiring 12-month continuous duration for finding of medically determinable impairment).

## B.     Weighing of Shoulder Evidence

Plaintiff relatedly argues that the ALJ erred in weighing the medical evidence concerning his shoulder impairments.  Specifically, he claims error in the ALJ's elevation of the opinions of the state agency's two non-examining physicians over that of his treating physician, Dr. Covett.  This was particularly problematic, he contends, because the non-examining opinions were based on an incomplete record that did not include Dr. Covett's contrary opinion that arthritis in plaintiff's left shoulder significantly limited his ability reach and grasp.  R. 982.

Plaintiff's premise, however, is flawed.  The ALJ did not give "great weight" to the non-examiners, as plaintiff contends, but rather relied principally on the opinion of an examining physician, Dr. Kogen, which he found consistent "with the objective record and the two state agency physical and mental functional assessments for less than light work activity."  R. 32.  In June 2014, Dr. Kogen observed full strength and range of motion in plaintiff's upper extremities and opined that plaintiff suffered no deficits that would limit his ability to reach or grasp.  R. 659-60.  This is consistent with Dr. Covett's November 2015 observation of normal range of motion.  Accordingly, there is no force to plaintiff's argument that the ALJ erred by relying on opinions that failed to account for Dr. Covett's May 2015 opinion.

8

As to the weight given Dr. Covett's treating source opinion, "[t]he law in this circuit does not require the ALJ to give greater weight to the opinions of treating physicians." Hagan v. Colvin, 52 F. Supp. 3d 167, 174 (D. Mass. 2014) (quoting Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 89 (1st Cir.1991). "When attributing less than controlling weight to a treating source's opinion, the only constraint is that the ALJ must 'give good reasons' for his decision based on consideration of: (1) the length, frequency, nature, and extent of the treatment relationship; (2) the supportability of the opinion; (3) the consistency of the opinion with the record as a whole; (4) the treating physician's specialization in the relevant area of medicine; and (5) other factors brought to the ALJ's attention." Murphy v. Colvin, No. 15-11548, 2016 WL 5402184 at *13 (D. Mass. Sept. 27, 2016) (citing 20 C.F.R. §§ 402.1527(c)(2)–(6), 416.927(c)(2)–(6)).

Here, the ALJ properly considered all of the record evidence, and gave good reasons for rejecting Dr. Covett's opinion:

> As for the opinion evidence, per SSR 96-2p, the undersigned gives no weight to Dr. Covett's physical and mental functional assessments because he has only treated the claimant for six months and did not have a longitudinal history with the claimant (Exhibits 7F, 8F). In addition, he is a primary care physician, and not a psychiatrist, orthopedic or neurology specialist . . . Regarding physical functioning, the undersigned finds Dr. Covett's physical RFC and the claimant's subjective allegations of severe pain are out of proportion with objective imaging studies showing mild lumbar disc disease, normal cervical spine, mild right shoulder tendinopathy, normal right hip and knee, and unremarkable laboratory testing results.

R. 32. Although Dr. Covett indicates he began treating plaintiff in November 2014 (R. 975), six months prior to opining on his shoulder limitations (R. 980-83), the only note preceding that opinion is from four days before (R. 995) and the full record contains

9

three visits total (R. 984-99). The ALJ appropriately considered this absence of a longitudinal treatment history in according no weight to Dr. Covett's opinion. See 20 C.F.R. 416.927(c)(2).

As reviewed above, plaintiff showed limited range of motion in each shoulder on only one occasion, after which he resumed full range of motion. Clinical notes consistently support full strength and absence of tenderness in plaintiff's upper extremities, and he testified to receiving no treatment in either shoulder. The record evinced "faint calcific density adjacent to greater tuberosity suggestive of calcific tendinopathy," R. 1003, but contained no radiographic evidence of arthritis or other acute abnormality. Accordingly, substantial evidence supports the ALJ's rejection of Dr. Covett's opinion.

## IV. Conclusion

Plaintiff's Motion to Reverse (Docket # 16) is denied, and Defendant's Motion to Affirm the Commissioner's Decision (Docket # 17) is allowed.

Judgment may be entered affirming the decision of the Commissioner.

|  July 10, 2018  |  /s/Rya W. Zobel  |
|---|---|
| DATE | RYA W. ZOBEL |
|  | SENIOR UNITED STATES DISTRICT JUDGE |